**Douglas H. WILSON, Plaintiff,**

v.

**PETROLEUM WHOLESALE, INC., a Texas corporation, and Robert Steil, individually, Defendants.**

**Civ. A. No. 94–D–2424.**

United States District Court,
D. Colorado.

Nov. 6, 1995.

---

Hal B. Warren, Darrell D. Damschen, Frank & Finger, P.C., Evergreen, CO, for Plaintiff.

Mark R. Davis, Wood, Ris & Hames, P.C., Denver, CO, for Defendants.

## MEMORANDUM OPINION AND ORDER

DANIEL, District Judge.

This matter is before the Court on Defendants' motion to exclude the testimony of Dr. Jafek as it relates to the causation of Plaintiff's hearing loss and tinnitus. The Court, having read the briefs of the parties and heard oral argument, finds and orders as follows:

The Court is mindful of the holding of *Daubert v. Merrell Dow Pharmaceuticals*, — U.S. ——, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). In that decision, the Supreme Court held that the Federal Rules of Evidence supersede the prior general acceptance test for evaluating the admissibility of scientific evidence articulated in *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923). *Id.* at ——, 113 S.Ct. at 2793. Instead, it held that when the issue of the admissibility of expert opinion testimony is raised and when scientific evidence is being challenged, the trial judge serves as a gate keeper. *Id.* at ——, 113 S.Ct. at 2798–99. In that capacity, the trial judge must ensure that any and all scientific testimony or evidence that is to be admitted is both relevant and reliable.

"Scientific," as used in Federal Rules of Evidence, Rule 702, means if the scientific, technical or other specialized

knowledge will assist the trier of fact in understanding evidence or to determine facts in issue, then the expert may testify to those issues, if in fact his testimony is grounded in methods and procedures of science. "Knowledge," within the meaning of Rule 702, means that if the scientific or other specialized knowledge will assist the trier of fact in understanding the evidence and determining facts in issue, then that expert may testify if the testimony is based upon more than subjective belief or unsupported speculation.

*Daubert* makes it clear that this subjective scientific knowledge need not be known to a certainty to permit expert testimony, since arguably there are no certainties in science. *Id.* at ——, 113 S.Ct. at 2795. The Court now applies these general precepts of *Daubert* to the facts of this case.

█ It is undisputed that the plaintiff was involved in an incident on or about December 28, 1993, when he was exposed to some noise from an air horn. He was exposed to an air horn from a semi-truck for not more than two minutes. The issue is whether Dr. Jafek, who has been proffered by the plaintiff, can give causation testimony that Mr. Wilson's exposure to the air horn caused his permanent hearing loss and tinnitus.

The Court will treat as true for purposes of its ruling certain statements set forth in Dr. Jafek's affidavit. Dr. Jafek acknowledges that he examined plaintiff Douglas Wilson on February 28, 1995, for the purpose of rendering an opinion regarding the causation of his injuries and the extent of his injuries in this litigation. In his affidavit, at paragraph four, Dr. Jafek specifically states that Mr. Wilson was examined in the following accepted fashion: a medical history was obtained, a physical examination was performed, objective testing occurred, a review of outside records was made, a working diagnosis was developed, differential diagnosis was performed, and consideration of a diagnosis, in light of the current scientific theory, including a consideration of all material regarding the final diagnosis and course of treatment, was pursued.

In paragraph five, Dr. Jafek notes, before rendering his opinion, that he reviewed the audiometric examinations that had previously

been conducted on Mr. Wilson. Further, he performed a complete exam of Mr. Wilson's auditory system and took a complete history. Dr. Jafek points out that the process he engaged in is known as differential diagnosis. Specifically, at paragraph ten, Dr. Jafek states his opinion that Mr. Wilson has permanent hearing loss and permanent tinnitus, and that both were caused by the incident of December 28, 1993. The opinion is based not only on his extensive training and career in the field of otolaryngology, but also on the time-honored and well-accepted method of differential diagnosis, which is a process whereby practitioners of medical arts elicit symptoms by examination and history and rule out causes until the most probable cause is determined. At his deposition, Dr. Jafek further testified to his use of the differential diagnosis approach in arriving at his conclusion.

Based on its consideration of the foregoing factors, the Court finds that Dr. Jafek's expert opinion as to causation is both reliable and relevant and is therefore in conformity with the requirements of *Daubert.* The Court agrees with plaintiff's counsel when he says it is not the Court's role to determine whether Dr. Jafek's ultimate opinion is valid. This Court's role is only to determine if Dr. Jafek's underlying methodology is grounded in science to a sufficient degree that it has enough reliability and relevance to satisfy the *Daubert* test. This Court so finds and concludes that Dr. Jafek's opinions can be presented to the trier of fact.

Finally, the Court has considered defendants' argument that, under *Daubert,* Dr. Jafek's opinion as to causation is not reliable for the following reasons:

1. OSHA regulations provide for a 100 decibel level exposure in the work place;

2. Dr. Jafek was not Wilson's treating physician;

3. Lack of scientific studies on the specific issue of whether a two minute exposure to 100 decibels can produce a permanent hearing loss;

4. Dr. Jafek's opinion was formed without knowledge of the specific decibel level that Wilson was exposed to;

5. Dr. Jafek's opinion is based only on the self-report of Wilson; and

6. Dr. Jafek's specific opinion regarding causation has not been tested, published, or subject to peer review.

■ However, without discussing the merits of each point in detail, the Court finds that these objections, if admissible, are properly suited for the province of cross-examination. Furthermore, as stated above, the Court notes that some of the defendants' objections focus on Dr. Jafek's ultimate conclusion rather than the underlying methodology the doctor employed in arriving at his opinion—concerns removed from this Court's *Daubert* calculus.

Accordingly, the Defendants' Motion in Limine is denied.